JS-6
O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| SAM SABER,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>JPMORGAN CHASE BANK, N.A., ET AL.,<br><br>　　　　Defendants. | Case No.: SACV 13-00812 DOC(JCGx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [38]** |

Before the Court is Defendant JPMorgan Chase's ("Chase") Motion for Summary Judgment (Dkt. 38). After considering the moving and opposing papers, the entirety of the record, and the oral arguments of each party, the Court GRANTS the motion.

**I.　Background**

Plaintiff Sam Saber ("Saber") refinanced his home in Newport Beach, California (the "Property") using a loan from WaMu in October 2007. Defendant's Statement of Undisputed

Facts ("DSUF") ¶ 1.  The Deed of Trust identifies Washington Mutual Bank ("WaMu") as the lender and beneficiary, and California Reconveyance Company as trustee.  DSUF ¶ 2.

The Federal Deposit Insurance Corporation ("FDIC") assumed control of WaMu as receiver in September 2008.  On September 25, 2008, the same day it became the Receiver, the FDIC signed a Purchase and Assumption Agreement ("Purchase Agreement") selling certain WaMu assets to Chase.  DSUF ¶ 4.

Saber fell behind on the loan and was in arrears by $67,683.77 as of March 17, 2009.  DSUF ¶ 5.  Chase initiated foreclosure proceedings in February 2012   TAC ¶ 10.  Saber applied for a loan modification, which Chase never affirmatively approved or denied.  TAC ¶¶ 12-13.  Chase gave notice of the Trustee's sale, and Saber resubmitted his modification application.  TAC ¶ 13.

After a series of complaints in state court, Saber filed the instant lawsuit.  The only remaining claim in the Third Amended Complaint is a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.  Saber claims that Chase misrepresented its relationship with WaMu, failing to disclose that it had purchased only the right to collect on many residential loans, not the liability associated with the loans.  TAC ¶¶ 18-20.  Saber alleges that Chase did this by using WaMu's logo on its correspondence and other Chase documents, and Chase's informing its customers that "WaMu is becoming Chase," allegedly suggesting that the two had merged.  *See* TAC ¶¶ 18-20.

Saber claims this harmed him because he was "prevented from knowing who the true owner of the Note was and thus prevented from being able to communicate directly with the true owner of the Note on critical matters such as: loan loss mitigation possibilities (through loan modification or short sale); reinstatement rights (under California Civil Code section 2924c); and beneficiary statements, payoff demand statement, and short-pay demand statements under California Civil Code section 2943, and this has caused Plaintiff to be at increased risk of losing the Home to non-judicial foreclosure."  TAC ¶ 22.

**II.    Legal Standard**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

### III. Discussion

#### a. Causation

Chase argues that Saber cannot show that any of the alleged misrepresentations, even if they were misleading, actually caused any economic injury he suffered. The Court reasoned in its order denying Chase's Motion to Dismiss that having one's home in foreclosure could create a sufficient economic risk to satisfy the standing requirement under the UCL. Chase argues that there is no evidence supporting the inference that any economic damage or risk of foreclosure was caused by any of Chase's representations. The Court agrees.

### i. Potential Claim against the FDIC as Receiver

In his opposition, Saber claims that Chase's alleged misrepresentations caused him harm because Chase's acts tricked Saber into thinking that Chase owned the liability for the loans. As a result, Saber argues, he did not know that the FDIC was the proper party against whom to make claims regarding fraud in the origination of his loan, and so missed the deadline to make such claims. *See* Opp'n at 2. He argues that the damages resulting from this are the foreclosure of his home, or at least increased risk of foreclosure.

This theory fails for two reasons. First, it was not alleged in the TAC. The TAC makes no mention of administrative claims against the FDIC as Receiver, nor does it allege this as a cause of Saber's harm. The TAC states that Chase's actions made it impossible for Saber to discuss loan modification options and other foreclosure-prevention options. It says nothing about preventing Saber from making origination claims or any other type of claim against the FDIC.

"[A] court has discretion to refuse to allow a new theory in opposition to summary judgment." *Jefferson v. Chase Home Fin.*, C06-6510 TEH, 2008 WL 1883484 (N.D. Cal. Apr. 29, 2008). In *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1291-92 (9th Cir. 2000), the Ninth Circuit held that the district court did not err when it refused to entertain a new theory of liability raised for first time at the summary judgment stage. *See also In re Stratosphere Corp. Securities Litigation,* 66 F. Supp. 2d 1182, 1201 (D. Nev. 1999), *citing Apache Survival Coalition v. United States,* 21 F.3d 895, 910 (9th Cir. 1994) (when new issues or evidence supporting a legal theory outside scope of complaint are introduced in opposition to summary judgment, district court should construe matter as request to amend pleadings). Courts are

particularly careful to allow new theories when doing so would prejudice the defendant. *See Jefferson v. Chase Home Fin.*, C06-6510 TEH, 2008 WL 1883484 (N.D. Cal. Apr. 29, 2008).

      Here, the Court finds that Saber's new theory cannot be entertained. It is materially distinct from the theory alleged in the TAC, and requires an entirely different set of facts to prove or disprove its truth. At a minimum, Chase would need to investigate whether Saber had other information that might have notified him of the FDIC's role and his possible administrative claims. There is also absolutely no reason that Saber could not have claimed this theory in the TAC; the FDIC's role as Receiver and the fact of an administrative claims procedure existed long before Saber filed his complaint. There is no possible reason for the delay other than negligence or bad faith, and it is highly prejudicial. There is no suggestion in Saber's evidence that Chase had sufficient notice and time to respond to this claim; indeed, Saber's declaration stating that he would have filed such a claim is dated April 28, 2014. Thus, Saber is not permitted to rely on this theory of liability to defeat summary judgment.

      Second, even if Saber had adequately raised this previously, there is no evidence whatsoever showing that, had Saber submitted a claim to the FDIC, he would not have been harmed or would have been less harmed. There is no discussion of how the FDIC handled origination claims, the strength of Saber's origination claims, or even tenable evidence that Chase's misrepresentations actually caused Saber to forego making a claim. Indeed, Saber claims that his contact with Chase about his loan began in July 2009, and that Chase should have informed him then of its status. *See* Saber Decl. ¶ 9. This was well after the FDIC became Receiver in September 2008, however, and there is no evidence submitted that shows Saber could have made a claim at that point, the likelihood of the claim's consideration, or the likelihood of its success. There are simply no facts supporting Saber's position, such that even if he could use this theory of liability, summary judgment for Chase would still be appropriate.

      ii.   Loan Modification or Foreclosure Damages

      Interestingly, Saber does not argue any other theory in his Opposition, suggesting that he concedes that any harm based on the initiation of foreclosure proceedings or loan modification is

impossible to connect to Chase's alleged misrepresentations. However, out of an abundance of caution, the Court addresses that claim as well.

To prove a violation of the UCL, Saber must show that the unfair, unlawful, or fraudulent acts caused the economic injury in question. The UCL requires that a plaintiff's economic injury come 'as a result of' the unfair competition or a violation of the false advertising law. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326, 246 P.3d 877, 887 (2011). Saber must show a "causal connection" between his harm and Chase's alleged misrepresentations. "A plaintiff fails to satisfy the causation prong of the statute if he or she would have suffered the same harm whether or not a defendant complied with the law." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 522 (2013) (internal quotation marks and citation omitted).

Chase argues that Saber cannot show that Chase's alleged misrepresentations caused the impending foreclosure or any modification-related damages. The Court agrees. The initiation of foreclosure proceedings and the pending loss of Saber's home are proximately caused by Saber missing loan payments. If Saber could present evidence to suggest that the alleged misrepresentations caused him to miss such payments, he could perhaps show a material issue of fact. But this is not the case. A careful review of all of the evidence submitted in conjunction with the Motion for Summary Judgment shows no connection whatsoever between Chase's announcements or statements and Saber's failure to make payments. Saber presents no evidence to rebut Chase's evidence that the harm Saber faces is a result of his default, not any representations by Chase. For that reason, summary judgment is appropriate. *See Jenkins*, 216 Cal. App. 4th at 523 (plaintiff failed to plead cause of action under UCL where she defaulted before the alleged unfair acts, and so her impending disclosure had no causal nexus to the alleged later-in-time unfair acts).

Finally, to the extent that Saber's claims are based on the modification process and any negative impacts thereto, the claims also fail. Saber had defaulted on his mortgage. There is no evidence of a contractual duty or requirement that Chase provide Saber with a loan modification, or provide a certain degree of consideration for a loan modification request. *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 222 (2010). Saber was not entitled to a

modification, and there is no evidence suggesting how any representations by Chase affected his loan modification process. There is thus no material issue of fact on this point and summary judgment in Chase's favor is appropriate.

## IV. Disposition

Because the question of causation is dispositive of a UCL claim under any of the three prongs, the Court GRANTS summary judgment on this basis. There is therefore no need to consider any of Chase's other arguments on this motion. The motion is GRANTED.

DATED:     May 22, 2014

_____

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE